Slip Op. 17-46

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LINYI BONN FLOORING MANUFACTURING CO., LTD.,** | |
| Plaintiff, | |
| **OLD MASTER PRODUCTS, INC. & LUMBER LIQUIDATOR SERVICES, LLC,** | |
| Plaintiff-Intervenors, | **Before: Timothy C. Stanceu, Chief Judge** |
| v. | **Court No. 15-00227** |
| **UNITED STATES,** | |
| Defendant, | |
| **COALITION FOR AMERICAN HARDWOOD PARITY,** | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Remanding a determination made in an administrative review of an antidumping duty order]

Dated: April 21, 2017

*Jeffrey S. Neeley*, Husch Blackwell LLP, of Washington D.C., for plaintiff Linyi Bonn Flooring Manufacturing Co., Ltd.  With him on the brief was *Michael Scott Holton*.

*John Robert Magnus* and *Sheridan Scott McKinney*, Tradewins LLC, of Washington D.C., for plaintiff-intervenor Old Master Products, Inc.

*Kristen S. Smith* and *Mark Rett Ludwikowski*, Sandler, Travis & Rosenberg, PA, of Washington D.C., for plaintiff-intervenor Lumber Liquidator Services, LLC.

*Tara K. Hogan*, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of Washington D.C., for defendant United States.  With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*,

Assistant Director.  Of counsel on the brief was *Shelby M. Anderson*, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Jeffrey Steven Levin*, Levin Trade Law, P.C., of Bethesda, M.D., for defendant-intervenor Coalition for American Hardwood Parity.

Stanceu, Chief Judge:  Linyi Bonn Flooring Manufacturing Co., Ltd. ("Linyi Bonn" or

"Bonn"), a Chinese producer and exporter of multilayered wood flooring, brought this action to

contest a final determination in an antidumping duty proceeding.  The International Trade

Administration of the U.S. Department of Commerce ("Commerce" or the "Department") issued

the contested determination to conclude the second periodic administrative review of an

antidumping duty ("AD") order on multilayered wood flooring from the People's Republic of

China ("China" or "the PRC").[1]  Commerce assigned Linyi Bonn the AD duty rate of 58.84%

that it calculated for the "PRC-wide entity," which Commerce considered to be comprised of

Chinese producers and exporters of multilayered wood flooring that failed to establish

independence from the PRC government.

The court rules that assigning Linyi Bonn the 58.84% rate was unlawful.  The record

does not demonstrate that Commerce provided Linyi Bonn notice of a procedure for which Linyi

Bonn may have qualified that would have prevented the assignment of the 58.84% rate in the

special circumstance of this case.  That circumstance occurs when a foreign exporter and

---

[1] "Multilayered wood flooring" is a product "often referred to by other terms, *e.g.*, 'engineered wood flooring' or 'plywood flooring.'"  *Multilayered Wood Flooring from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 76 Fed. Reg. 76,690 (Int'l Trade Admin. Dec. 8, 2011).  Such flooring generally is "composed of an assembly of two or more layers or plies of wood veneer(s)" in which "[t]he several layers, along with the core, are glued or otherwise bonded together to form a final assembled product." *Id.*  "Veneer is referred to as a ply when assembled" in combination with a core.  *Id.* at 76,690 n.2.

producer seeks an individual dumping margin in a parallel "new shipper" review and also had no

reviewable shipments in the periodic review other than those Commerce reviewed in the new

shipper review.  Linyi Bonn obtained a zero dumping margin in the parallel new shipper review

but, unlike two other parties who were similarly situated, was not permitted to retain that rate.

The court remands the agency's decision for correction.

## I. BACKGROUND

### A.  The Contested Decision

The contested decision (the "Final Results") is *Multilayered Wood Flooring from the*

*People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final*

*Results of New Shipper Review; 2012–2013*, 80 Fed. Reg. 41,476 (Int'l Trade Admin. July 15,

2015) ("*Final Results*").

### B.  The Antidumping Duty Investigation and Issuance of the Order

Commerce initiated an AD investigation of multilayered wood flooring from the PRC

(the "subject merchandise") in November 2010.  *Multilayered Wood Flooring from the People's*

*Republic of China: Initiation of Antidumping Duty Investigation*, 75 Fed. Reg. 70,714 (Int'l

Trade Admin. Nov. 18, 2010).  In May 2011, Commerce published a preliminary affirmative

determination that there was a reasonable basis to believe or suspect that the subject merchandise

was being sold, or likely to be sold, at less than fair value, as provided in section 733(b) of the

Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1673b(b).[2]  *Multilayered Wood Flooring from the*

*People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value*,

76 Fed. Reg. 30,656 (Int'l Trade Admin. May 26, 2011).  Later that year, Commerce reached an

---

[2] All citations to the United States Code herein are to the 2012 edition.  All citations to the Code of Federal Regulations herein are to the 2015 edition.

affirmative final determination of sales or likely sales of the subject merchandise at less than fair

value ("Final LTFV Determination"), pursuant to section 735(a) of the Tariff Act, 19 U.S.C.

§ 1673d(a).  *Multilayered Wood Flooring From the People's Republic of China: Final*

*Determination of Sales at Less Than Fair Value*, 76 Fed. Reg. 64,318 (Int'l Trade Admin.

Oct. 18, 2011) (*"Final LTFV Determination"*).

Following allegations that the Final LTFV Determination contained ministerial errors,

Commerce issued an amended final LTFV determination and the AD order on multilayered

wood flooring from China (the "Order") in late 2011.  *Multilayered Wood Flooring From the*

*People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and*

*Antidumping Duty Order*, 76 Fed. Reg. 76,690 (Int'l Trade Admin. Dec. 8, 2011) (*"Amended*

*Final LTFV Determination"*).  In the amended final LTFV determination, Commerce assigned a

zero margin to an individually investigated respondent and weighted average dumping margins

of 3.97% and 2.63%, respectively, to the two other exporters/producers it individually

investigated.  *Id.*, 76 Fed. Reg. at 76,692.  Commerce assigned a simple average of the latter two

margins, 3.31%, to 89 other exporters/producers, each of which it had determined to have

demonstrated *de facto* and *de jure* independence from the government of the PRC.  *Final LTFV*

*Determination*, 76 Fed. Reg. at 64,322; *Amended Final LTFV Determination*, 76 Fed. Reg.

at 76,692-93.

In the Final LTFV Determination, Commerce stated as follows with respect to

antidumping duty investigations involving merchandise from nonmarket economy ("NME")

countries, including the PRC:

> In proceedings involving NME countries, the Department holds a
> rebuttable presumption that all companies within the country are subject to

> government control and, thus, should be assessed a single antidumping duty rate.
> It is the Department's policy to assign all exporters of the subject merchandise in
> an NME country this single rate unless an exporter can demonstrate that it is
> sufficiently independent so as to be entitled to a separate rate.

*Final LTFV Determination*, 76 Fed. Reg. at 64,321.  Invoking its authority under section 776 of

the Tariff Act, 19 U.S.C. § 1677e, to use "facts otherwise available" and "an adverse inference"

in making determinations with respect to uncooperative respondents, Commerce assigned a rate

of 58.84% to the "PRC-wide entity," which it determined to include those exporters/producers

that failed to demonstrate independence from the PRC government.  Commerce stated that these

were Chinese companies that "did not respond to the Department's request for information[,]

including information pertaining to whether they were separate from the PRC-wide entity." *Id.*,

76 Fed. Reg. at 64,322.  Commerce added that "[t]hus, the Department has found that these PRC

exporters/producers are part of the PRC-wide entity and the PRC-wide entity has not responded

to our requests for information." *Id.*  Commerce determined it appropriate to assign the PRC-

wide entity, as an adverse inference, "the rate of 58.84%, the highest calculated transaction-

specific rate among mandatory respondents." *Id.*

C.  The Commencement of the New Shipper Reviews and the Second Periodic Administrative
Review of the Order

On June 28, 2013, Commerce initiated "new shipper" reviews ("NSRs") of Linyi Bonn

and two other Chinese requestors, Dalian Huade Wood Product Co., Ltd. ("Huade") and

Zhejiang Fuerjia Wooden Co., Ltd. ("Fuerjia"), pursuant to section 751(a)(2)(B) of the Tariff

Act, 19 U.S.C. § 1675(a)(2)(B).[3] *Multilayered Wood Flooring from the People's Republic of*

---

[3] As explained herein, a "new shipper review" allows an exporter or producer of
merchandise subject to an antidumping duty order that did not export the subject merchandise
(continued . . .)

*China: Initiation of Antidumping Duty New Shipper Reviews; 2012-2013*, 78 Fed. Reg. 46,318

(Int'l Trade Admin. July 31, 2013) ("*NSR Initiation Notice*").  The period of review ("POR") for

the new shipper reviews was the six-month period of December 1, 2012 through May 31, 2013.

*Id.*

In December 2013, while the new shipper reviews were underway, Commerce announced

the opportunity to request a periodic administrative review of the Order under section 751(a) of

the Tariff Act, 19 U.S.C. § 1675(a).  *Antidumping or Countervailing Duty Order, Finding, or*

*Suspended Investigation; Opportunity to Request Administrative Review*, 78 Fed.

Reg. 72,636, 72,638 (Int'l Trade Admin. Dec. 3, 2013).  Based on requests for reviews of various

exporters and producers made by the Coalition for American Hardwood Parity, the petitioner in

the original AD investigation and the defendant-intervenor in this litigation, Commerce initiated

the second periodic administrative review of the Order ("second review") in February 2014.  *See*

*Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for*

*Revocation in Part*, 79 Fed. Reg. 6,147, 6,152-6,153 (Int'l Trade Admin. Feb. 3, 2014)

("*Initiation Notice*").  In its notice initiating the second periodic review (the "Initiation Notice"),

Commerce identified Linyi Bonn as one of the parties for which a review had been requested.

*Id.*, 79 Fed. Reg. at 6,152.  The period of review was December 1, 2012 through November 30,

2013, i.e., a period that began on the same date the POR for the new shipper reviews began but

extended for six months beyond that period.  *Compare id. with NSR Initiation Notice*, 78 Fed.

Reg. at 46,318.

---

(. . . continued)
during the period of investigation, and is not affiliated with a producer or exporter who did, to
obtain an individual weighted average dumping margin.  *See* 19 U.S.C. § 1675(a)(2)(B).

Commerce explained in the Initiation Notice that "[i]n proceedings involving non-market economy ("NME") countries, the Department begins with a rebuttable presumption that all companies within the country are subject to government control and, thus, should be assigned a single antidumping duty deposit rate." *Initiation Notice*, 79 Fed. Reg. at 6,148.  The Initiation Notice continued, "[i]t is the Department's policy to assign all exporters of merchandise subject to an administrative review in an NME country this single rate unless an exporter can demonstrate that it is sufficiently independent so as to be entitled to a separate rate." *Id.*

### D.  The Results of the New Shipper Reviews

In the new shipper reviews, Commerce preliminary found that sales of subject merchandise by Linyi Bonn, Huade, and Fuerjian during the 6-month new shipper POR were not at less than normal value and, accordingly, determined preliminary zero weighted average dumping margins. *Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of Antidumping Duty New Shipper Reviews; 2012-2013*, 79 Fed. Reg. 33,723, 33,723-24 (Int'l Trade Admin. June 12, 2014).  Commerce also concluded that all three exporter/producers had established their independence of control of the government of the PRC. *Decision Mem. for Preliminary Results of Antidumping Duty New Shipper Review. 2012-2013: Multilayered Wood Flooring from the People's Republic of China*, A-570-970, APR 12-13, at 4-6 (Int'l Trade Admin. June 6, 2014) *available at* http://enforcement.trade.gov/frn/summary/prc/2014-13766-1.pdf (last visited Apr. 11, 2017) ("*Prelim. NSR I&D Mem.*").  As to all three new shipper applicants, Commerce reached the same conclusions in the final results of the new shipper reviews and assigned final individual weighted average dumping margins of zero to all three.  *Multilayered Wood Flooring from the People's*

*Republic of China: Final Results of Antidumping Duty New Shipper Reviews; 2012-2013*,

79 Fed. Reg. 66,355, 66,356 (Int'l Trade Admin. Nov. 7, 2014); *Issue and Decision Mem. for the*

*Final Results of Antidumping Duty New Shipper Review. 2012-2013: Multilayered Wood*

*Flooring from the People's Republic of China*, A-570-970, APR 12-13, at 1 (Int'l Trade Admin.

Nov. 7, 2014) *available at* http://enforcement.trade.gov/frn/summary/prc/2014-26561-1.pdf (last

visited Apr. 11, 2017) ("*Final NSR I&D Mem.*").

<u>E.  The Results of the Second Periodic Administrative Review</u>

On January 9, 2015, Commerce published the preliminary results of the second review

("Preliminary Results").  *Multilayered Wood Flooring from the People's Republic of China:*

*Preliminary Results of Antidumping Duty Administrative Review; 2012–2013*, 80 Fed. Reg. 1388

(Int'l Trade Admin. Jan. 9, 2015) (*"Prelim. Results"*).

Commerce preliminarily designated Linyi Bonn "part of the PRC-wide entity" and

assigned it the rate of 58.84%, the PRC-wide rate.  *Id.*, 80 Fed. Reg. at 1390, 1390 n.9.  In the

Preliminary Results, Commerce included Linyi Bonn within a group of companies that "were

named in the *Initiation Notice* but did not submit a certification of no shipment, separate rate

application or separate rate certification" and were "therefore . . . part of the PRC-wide entity."

*Id.*, 80 Fed. Reg. at 1390 n.9.  Commerce found that Huade and Fuerjia "did not have any

qualifying shipments for the Department to review, due to their certification that their only POR

shipments underwent review during their respective new shipper reviews."  *Id.*, 80 Fed. Reg.

at 1389 n.4.  Commerce determined that "[b]oth companies therefore maintain the dumping

margin that was assessed as a result of their respective new shipper reviews."  *Id.*  As mentioned

above, those margins were zero.

Following publication of the Preliminary Results, Linyi Bonn submitted a document on

January 22, 2015, which it designated as a "Partial No Shipment Certification."  Commerce

rejected the filing of this document as untimely information and removed it from the

administrative record.  *Rejection of Submission of Partial No Shipment Certification Filed in the*

*2012-2013 Administrative Review of the Antidumping Duty Order on Multilayered Wood*

*Flooring from the People's Republic of China*, A-570-970, APR 12-13 (Jan. 30, 2015)

(*"Rejection Letter"*).  In its brief before the court, Linyi Bonn states that this document informed

Commerce that Linyi Bonn had made no sales in the one-year period of review for the second

review other than one sale it had reported previously in the new shipper reviews.  Mem. of Law

in Supp. of Linyi Bonn Flooring Mfg. Co., Ltd.'s Mot. for J. on the Agency R. Under USCIT

R. 56.2, 6-7 (Mar. 15, 2016), ECF No. 37 (Confidential), ECF No. 37 (Public) ("Pl.'s Br.").

According to Linyi Bonn's brief, it was upon that sale that Commerce determined the zero

margin for Linyi Bonn in the new shipper review.  *See id.* at 6.  In its rejection letter to Linyi

Bonn, Commerce cited the *Initiation Notice*, stating that this issuance had notified parties that

"the deadline by which parties were to certify that they had no exports, sales, or entries to review

was April 4, 2014."  *Id.*  This date corresponded to the 60-day deadline stated in the *Initiation*

*Notice* for "no shipment" certifications, which was 60 days from the February 3, 2014

publication of the Initiation Notice.  *See Initiation Notice*, 79 Fed. Reg. at 6,147.  Commerce

cited this deadline in its rejection letter but also stated that its rejection of the submission was "in

accordance with" its regulation, 19 C.F.R. § 351.302(d).  *Rejection Letter.*  Noting that the

deadline for submission of factual information under that regulation was 30 days before the

scheduled date of the preliminary results of the periodic review, Commerce concluded that the

fully extended deadline for publication of the Preliminary Results was December 31, 2014 and

that the deadline for submission of factual information in the review was December 1, 2014.  *Id.*

In the Final Results, Commerce determined a zero margin for one individually examined

respondent and a 13.74% margin for another.  *Final Results*, 80 Fed. Reg. at 41,478.  Commerce

assigned the 13.74% margin to 67 separate rate respondents and assigned the PRC-wide entity

the rate of 58.84%.[4]  *Id.*  Commerce again included Linyi Bonn within a group of companies that

"were named in the *Initiation Notice* but did not submit a certification of no shipment, separate

rate application or separate rate certification" and were "therefore . . . part of the PRC-wide

entity."  *Id.*, 80 Fed. Reg. at 41,478, 41,478 n.18.  Based on the designation of Linyi Bonn as part

of the PRC-wide entity, the Final Results subjected Linyi Bonn to the PRC-wide rate of 58.84%.

*Id.*  As to Huade and Fuerjia, Commerce again found that it "did not have any qualifying

shipments for the Department to review, due to their certification that their only POR shipments

underwent review during their respective NSRs."  *Id.*, 80 Fed. Reg. at 41,477.

## F.  Proceedings in this Court

Linyi Bonn filed a summons on August 10, 2015, Summons, ECF No. 1, and a complaint

on August 19, 2015, Compl., ECF No. 8.  On March 15, 2016, Linyi Bonn filed, under USCIT

Rule 56.2, a motion for judgment on the agency record, which is now before the court.  Pl.'s Br.

Defendant United States responded on May 16, 2016.  Def.'s Resp. in Opp'n to Pl.'s Mot. for J.

---

[4] The final results of the second administrative review also contained the final results of a
new shipper review conducted on an exporter/producer (Linyi Anying Wood Co., Ltd.) not
included in the new shipper review of Linyi Bonn, Huade and Fuerjia and assigned this party a
zero margin.  *Multilayered Wood Flooring from the People's Republic of China: Final Results of
Antidumping Duty Administrative Review and Final Results of New Shipper Review; 2012–2013*,
80 Fed. Reg. 41,476, 41,477 (Int'l Trade Admin. July 15, 2015).

upon the Admin. R., ECF No. 43 ("Def.'s Opp'n.").  On July 1, 2016, Linyi Bonn replied to

defendant's opposition.  Pl.'s Reply to Def.'s Resp. in Opp'n to Pl.'s Mot. for J. upon the Admin.

R. of May 16, 2016, ECF No. 47 (Confidential) ECF No. 48 (Public) ("Pl.'s Reply").[5]

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises jurisdiction according to section 201 of the Customs Courts Act

of 1980, 28 U.S.C. § 1581(c), under which the court reviews actions commenced under

section 516A of the Tariff Act, 19 U.S.C. § 1516a, including an action contesting a final

determination concluding an administrative review of an antidumping duty order.  *See* 19 U.S.C.

§ 1516a(a)(2)(B)(iii).  In reviewing a final determination, the court "shall hold unlawful any

determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the

record, or otherwise not in accordance with law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).

### B.  Commerce Unlawfully Assigned the 58.84% Rate to Linyi Bonn

If an exporter or producer requests a "new shipper" review under an antidumping duty

order and qualifies for such a review because it did not export subject merchandise during the

period of the antidumping duty investigation and was not affiliated with an exporter or producer

who did, Commerce "shall conduct a review under this subsection to establish an individual

weighted average dumping margin . . . for such exporter or producer." 19 U.S.C.

§ 1675(a)(2)(B).  Commerce determines the individual weighted average dumping margin on the

basis of an entry or entries, and a sale or sales, of subject merchandise by the exporter or

producer; Commerce ordinarily will not conduct, or will rescind, a new shipper review in the

---

[5] Plaintiff-intervenors and defendant-intervenor have not filed briefs in this proceeding.

absence of an entry and sale during the period for the new shipper review.  *See* 19 C.F.R.

§ 351.214(b), (f)(2).

According to the Tariff Act, the determination reached in a new shipper review "shall be

the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the

determination [reached in the new shipper review] and for deposits of estimated duties."

19 U.S.C. § 1675(a)(2)(C).

Commerce determined a weighted-average dumping margin of zero for Linyi Bonn, as

well as for Huade and Fuerjia, in the 2012-2013 new shipper review proceeding.  *Multilayered*

*Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty New*

*Shipper Reviews; 2012-2013*, 79 Fed. Reg. at 66,356.  In concluding the new shipper reviews of

these three parties, Commerce indicated that it would instruct Customs and Border Protection

("CBP") "to liquidate the appropriate entries without regard to antidumping duties."  *Id.*

Commerce further indicated that a cash deposit rate of zero would apply to merchandise that was

produced by and also exported by Linyi Bonn.  *Id.*

In the Final Results, in which Commerce included Linyi Bonn within the PRC-wide

entity subject to the rate of 58.84%, Commerce stated that "[w]e intend to instruct CBP to

liquidate entries of subject merchandise exported by the PRC-wide entity at the PRC-wide rate."

*Final Results*, 80 Fed. Reg. at 41,479.  It further stated that "[f]or all PRC exporters of subject

merchandise that have not been found to be entitled to a separate rate, the cash deposit rate will

be that for the PRC-wide entity established in the less than fair value investigation (*i.e.*,

58.84%)."  *Id.*

The court holds that the decision Commerce reached in the Final Results to assign Linyi

Bonn the PRC-wide rate of 58.84% was contrary to law and must be set aside.  The

Department's stated rationale for its decision was that Linyi Bonn was among a group of

companies that "were named in the *Initiation Notice* but did not submit a certification of no

shipment, separate rate application or separate rate certification" and were "therefore . . . part of

the PRC-wide entity."  *Final Results*, 80 Fed. Reg. at 41,478, 41,478 n.18.  However, the court

concludes, based on the instructions Commerce provided in the Initiation Notice, that Linyi

Bonn was not eligible to file a "certification of no shipment."  The court concludes, further, that

Commerce maintained a special procedure by which Linyi Bonn could have sought to retain its

previously-obtained zero margin and its zero cash deposit rate in the second review by timely

filing a different kind of certification.  That certification would have been one signifying that

Linyi Bonn had one or more shipments during the POR for the second review but that any such

shipments were the subject of review by Commerce as part of the parallel new shipper reviews.

The treatment Commerce accorded to Huade and Fuerjin in the second review, as shown in the

published Final Results, confirms that this "partial no shipment certification" procedure existed,

but the administrative record as submitted to the court by Commerce in this proceeding does not

demonstrate that Commerce made a public disclosure of this special procedure.  Because of the

unfairness created by the lack of notice, the untimeliness of Linyi Bonn's attempted filing of its

own partial no shipment certification does not justify the Department's assigning Linyi Bonn the

58.84% margin.  The fact that Linyi Bonn did not file a separate rate application in the second

review also fails as a justification for the Department's decision.  Had Linyi Bonn been given

notice of the special procedure, it would have had a fair opportunity to comply with that

procedure and thereby would not have been required to file a separate rate application in order to

retain its zero margin.  The Department's failure to provide this notice to Linyi Bonn is not

"harmless error" because it had the potential to affect the outcome of the proceeding and caused

prejudice to Linyi Bonn.

Below, the court discusses further its reasoning for setting aside the Department's

decision and remanding this matter for corrective action.

1.  The Record Does Not Demonstrate that Commerce Notified Linyi Bonn of the Procedure for
Filing a "Partial" No Shipment Certification

As the court outlined previously, Linyi Bonn, Huade and Fuerjia each received a zero

weighted average dumping margin in the 2012-2013 new shipper review proceeding, but in the

Final Results of the second review Linyi Bonn's treatment differed substantially from that

Commerce accorded to Huade and Fuerjia.  As to the latter two companies, Commerce

determined in the Preliminary Results of the second review that both would maintain in that

review the dumping margins they obtained in the new shipper reviews, which were zero.

*Preliminary Results*, 80 Fed. Reg. at 1389 n.4.  Commerce made no change in this determination

in the Final Results.  *Final Results*, 80 Fed. Reg. at 41,477.[6]  Commerce further provided in the

---

[6] Commerce did not state in the final results of the second review that the review was
"rescinded" as to Huade and Fuerjia, although the decision essentially had that effect.  Regarding
rescission of an administrative review, the Department's regulations governing administrative
reviews of antidumping duty orders provide as follows:

*No shipments.*  The Secretary may rescind an administrative review, in
whole or only with respect to a particular exporter or producer, if the Secretary
concludes that, during the period covered by the review, there were no entries,
exports, or sales of the subject merchandise, as the case may be.

(continued . . .)

Final Results that, for Huade and Fuerjia, "the cash deposit rate will remain unchanged from the rate recently assigned in the new shipper reviews of those companies." *Id.*, 80 Fed. Reg. at 41,479.  Both companies, therefore, received in the Final Results the benefit of the zero assessment and cash deposit rates they obtained in the new shipper reviews; *see* 19 U.S.C. § 1675(a)(2)(C).

Drawing a contrast with Linyi Bonn, Commerce stated in the Final Issues & Decision Memorandum that Huade and Fuerjia "submitted timely certifications that they had no shipments during the instant review *other than those already reviewed in the new shipper review*, and both companies also certified that they served Linyi Bonn's counsel with copies of their no shipment certifications." *Issue and Decision Mem. for the Final Results of the 2012-2013 Antidumping Duty Admin. Review of Multilayered Wood Flooring from the People's Republic of China*, A-570-970, APR 12-13, at 19 (Int'l Trade Admin. July 8, 2015) (emphasis added) *available at* http://enforcement.trade.gov/frn/summary/prc/2015-17368-1.pdf (last visited Apr. 11, 2017) (*"Final I&D Mem."*).  The court is unable to conclude that Linyi Bonn received notice that it had the option of filing a certification in the nature of those filed by Huade and Fuerjia.  No procedure for a "partial" no shipment certification is set forth in the Department's regulations, and the record as filed by Commerce, *see* ECF No. 32 (Oct. 5, 2015), does not indicate any other means by which Commerce provided public notice of such a procedure.  In reaching its decision to assign Linyi Bonn the rate of 58.84%, Commerce relied upon its Initiation Notice and upon

_____

(. . . continued)
19 C.F.R. § 351.213(d)(3).  This regulation seems to require that there have been *no* entries, exports, or sales within the period of review; that was not the case as to Huade or Fuerjia (nor as to Linyi Bonn).

the fact that Linyi Bonn was placed on notice that Huade and Fuerjia filed such certifications.

*Final I&D Mem*. 19.  Neither suffices.

The Initiation Notice does not justify the Department's action because the procedure it set

forth was not the one pertinent to Linyi Bonn's situation.  This issuance, which refers to the one-

year POR for the periodic review, stated as follows:

> If a producer or exporter named in this notice of initiation had no exports,
> sales, or entries during the period of review ("POR"), it must notify the
> Department within 60 days of publication of this notice in the **Federal Register**.

*Initiation Notice*, 79 Fed. Reg. at 6,147 (emphasis in original).  By its plain terms, this

requirement applied only if a producer or exporter had *no* exports, sales, or entries during the

one-year POR.  Because that did not describe Linyi Bonn's posture in the second review, Linyi

Bonn was not directed to "notify the Department within 60 days of publication."  The Final

Issues & Decision Memorandum, therefore, impermissibly attached controlling significance to

the timely filing of a certification of "no exports, sales, or entries during the POR," *Final I&D

Mem.* 19.  Moreover, the Initiation Notice discussed the certification only as a certification

*requirement*; there is no indication in the text of an optional procedure for a producer or exporter

in Linyi Bonn's situation.

That the no shipment certification requirement did not apply to Linyi Bonn is shown by

the record in this case.  Commerce could not properly have determined an individual dumping

margin (in this case, of zero) for Linyi Bonn in the new shipper reviews in the absence of a sale

of subject merchandise and an entry.  *See* 19 C.F.R. § 351.214(b), (f)(2).  Consistent with this

fact, Linyi Bonn argues that it had a sale and a shipment during the period of review for the new

shipper review, which corresponded to the first six months of the POR for the second

administrative review, and that an entry of merchandise it produced occurred during those six

months.  *See* Linyi Bonn's Br. 6-7 (stating that it had one shipment during the new shipper

period of review and no reviewable sales during the remainder of the POR for the second

administrative review), 8 (referring to an entry during the first six months that was the basis for

Linyi Bonn's zero margin in the new shipper reviews and the only entry occurring during the

one-year POR for the second review).

Alluding to the notice question, Commerce reasoned in the Final Issues & Decision

Memorandum that Linyi Bonn was "aware of the fact that Dalian Huade and Zhejiang Fuerjia

both submitted timely no shipment certifications in the instant review despite having participated

in the same new shipper review with Linyi Bonn." *Final I&D Mem.* 19.  The certifications filed

by Huade and Fuerjia, although served on Linyi Bonn's counsel, fail as notice that Linyi Bonn

had the option of filing a certification such as those made by Huade and Fuerjia because they did

not constitute a notification by *Commerce*.  Notice of what other parties did does not establish

the existence of the unannounced procedure at issue in this case and did not signify that what

these parties filed were permissible submissions.  The actions by Huade and Fuerjia are not a

substitute for notice and procedural transparency on the part of the agency itself.

Referring to Linyi Bonn's own attempt to file a "partial no shipment certification" on

January 22, 2015, Commerce further reasoned as follows:

> As explained above, Dalian Huade and Zhejiang Fuerjia, the other companies that
> participated in the new shipper review with Linyi Bonn, both submitted timely no
> shipment certifications in the instant review, under precisely the same
> circumstances as Linyi Bonn.  All parties must be held to the same deadlines,
> which were made clear to all parties in this review.  Of the three companies that
> participated in the same new shipper review, only Linyi Bonn elected to wait until
> after the *Preliminary Results* to attempt to submit untimely information to the
> Department.

*Id.* at 20.  However, the certifications filed by Huade and Fuerjia could not have conformed to

the procedure announced in the Initiation Notice because each of these two parties, like Linyi

Bonn, must have had one or more shipments during the POR for the second review in order to

qualify for a zero margin in the new shipper reviews.  Commerce misdescribed the certifications

of Huade and Fuerjia as "timely no shipment certifications," *id*.

      Commerce further erred in stating in the Final Issues & Decision Memorandum that

"Linyi Bonn attempted to submit a no shipment certification 293 days after the deadline," *id.*

Because the requirement to file a "no shipment certification," as set forth in the Initiation Notice,

did not apply to Linyi Bonn, the 60-day deadline from which Commerce calculated the 293-day

period did not apply either.  Commerce, therefore, was mistaken not only in its reasoning that

"[a]ll parties must be held to the same deadlines" but also in its conclusion that the deadlines

"were made clear to all parties in this review."  *Id*.

      In summary, the court concludes, first, that Linyi Bonn was neither required nor

permitted to file a no shipment certification as described in the Initiation Notice.  Second, the

court concludes that nothing in the Department's regulations, the Initiation Notice, or in any

other document on the administrative record as submitted by Commerce constituted notice by

Commerce of the opportunity to obtain the result Commerce afforded to the other two

participants in the new shipper reviews, Huade and Fuerjia, i.e., the retention of the zero margin

and cash deposit rate obtained in those reviews.  That Huade and Fuerjia either knew of the

unannounced procedure or guessed, correctly, that a "partial" no shipment certification would be

accepted does not change the court's conclusion.  As a matter of due process, an agency may not

impose an adverse consequence on an affected party after failing to provide notice of a procedure

under which the party could have avoided such a consequence.  *See, e.g.*, *Gen. Elec. Co. v. United States Envtl. Prot. Agency*, 53 F.3d 1324, 1328-29 (D.C. Cir. 1995).  Here, Commerce subjected Linyi Bonn to the 58.84% rate in the second review rather than allow Linyi Bonn to retain the zero dumping margin for which it qualified in the new shipper reviews.  Linyi Bonn was entitled to notice of a procedure under which it could have retained the zero margin and thereby avoided that adverse result.[7]  On the record as submitted, the court must conclude that Commerce failed to provide notice of the "partial" no shipment certification procedure, which was of importance to Linyi Bonn, to the other two new shipper review participants, and to affected parties in general.  Due to the Department's prejudicial failure to announce that procedure, the court must set aside the results of the second administrative review.

Defendant raises two arguments in defense of the Department's decision.  It argues, first, that Commerce did not abuse its discretion when it rejected from the record of the second review Linyi Bonn's January 22, 2015 submission.  Def.'s Br. 8-14.  Defendant argues, second, that Commerce appropriately assigned Linyi Bonn the PRC-wide rate in the second review because Linyi Bonn had failed to meet its burden of rebutting the Department's presumption that it was under the control of the PRC government.  *Id.* at 15-18.  For the reasons discussed below, the court is not convinced by these arguments that it may sustain the Department's decision.

---

[7] Because the record as submitted does not demonstrate *any* notice by Commerce of the partial no shipment certification procedure, the court does not reach the issue of what would have been required to constitute adequate notice.

  2.  The Untimeliness of the January 22, 2015 Submission when Viewed According to 19 C.F.R.
       § 351.302(c) Does Not Justify the Department's Decision to Impose the 58.84% Rate

        Linyi Bonn argues that the Department's decision not to waive the deadline for

submitting a no shipment certification and accept Linyi Bonn's partial no shipment certification

was an abuse of discretion.  Pl.'s Br. 11-14.  Had Commerce rejected Linyi Bonn's January 22,

2015 submission and excluded it from the record solely on the ground that it was filed after the

close of the 60-day period for filing required no shipment certifications, the rejection would have

been impermissible because, as the court has explained, Linyi Bonn was neither subject to nor

eligible for the no shipment certification filing procedure.  However, Commerce also rejected

Linyi Bonn's Partial No Shipment Certification as untimely filed information based on its

regulations, 19 C.F.R. §§ 351.301(c)(5) and 351.302(d).  *See Rejection Letter*.  The

Department's regulation, 19 C.F.R. § 351.301(c)(5), requires generally that factual information

not falling within certain specific categories (set forth in 19 C.F.R. § 351.102(b)(21)(i)-(iv) and

not applicable here) be filed "30 days before the scheduled date of the preliminary results in an

administrative review, or 14 days before verification, whichever is earlier."  19 C.F.R.

§ 351.301(c)(5).  Pointing out that the fully extended deadline for publication of the Preliminary

Results was December 31, 2014, the rejection letter concluded that the deadline for submission

of factual information in the review was December 1, 2014.  *See Rejection Letter*.

        In 19 C.F.R. § 351.302(b), Commerce has provided generally that the Secretary of

Commerce may extend a time limit "for good cause."  The regulations further provide that a

party may request an extension of a time limit before the time limit has expired or, in the event

the time limit has expired, may file a request after that time, subject to a stringent limitation.

"An untimely filed extension request will not be considered unless the party demonstrates that an

extraordinary circumstance exists." 19 C.F.R. § 351.302(c).  "The request must be in writing, in

a separate, stand-alone submission, filed consistent with § 351.303 [setting forth technical filing

requirements], and state the reasons for the request."  *Id.*  The regulations state that "[a]n

extraordinary circumstance is an unexpected event that (i) Could not have been prevented if

reasonable measures had been taken, and (ii) Precludes a party or its representative from timely

filing an extension request through all reasonable means."  *Id.* § 351.302(c)(2).

It appears from the record that Linyi Bonn did not make a separate, stand-alone

submission to demonstrate an "extraordinary circumstance" as required by 19 C.F.R.

§ 351.302(c)(2), for the filing of the partial no shipment certification.  Nevertheless, the error by

Commerce was in failing to provide notice that Linyi Bonn even had the option of filing such a

certification.  This error was a controlling circumstance that should have guided the

Department's discretion, if not in admitting the January 22, 2015 document to the administrative

record of the second review, then in otherwise refraining from reaching the result that Commerce

did in this case.  The defect as to notice created a due process problem apart from the question of

whether or not the January 22, 2015 submission should have been admitted to the record.  The

court concludes that the untimeliness of the January 22, 2015 submission when viewed according

to 19 C.F.R. § 351.302(c)(2) cannot justify the decision to impose the 58.84% rate without notice

of the procedure for filing a "partial" no shipment certification.  To conclude otherwise would be

to charge Linyi Bonn with knowledge of an optional procedure that Commerce failed to disclose

to the public and to sustain an adverse consequence for Linyi Bonn's not having followed that

procedure.

#### 3.  Because the Department's Failure to Announce the Partial No Shipment Certification Procedure Was Not Harmless Error, the Fact that Linyi Bonn Did Not File a Separate Rate Application in the Second Review Does Not Justify the Department's Decision

As Commerce explained in the Initiation Notice, "[i]n proceedings involving non-market economy ("NME") countries, the Department begins with a rebuttable presumption that all companies within the country are subject to government control and, thus, should be assigned a single antidumping duty deposit rate" and "[i]t is the Department's policy to assign all exporters of merchandise subject to an administrative review in an NME country this single rate unless an exporter can demonstrate that it is sufficiently independent so as to be entitled to a separate rate." *Initiation Notice*, 79 Fed. Reg. at 6,148.

Commerce stated in the Initiation Notice that all firms listed in the notice (which included Linyi Bonn) "that wish to qualify for separate rate status in the administrative reviews involving NME countries must complete, as appropriate, either a separate rate application or certification, as described below."  *Id.*  The Initiation Notice instructed that "[e]ntities that do not have a separate rate from a completed segment of the proceeding should timely file a Separate Rate Application to demonstrate eligibility for a separate rate in this proceeding."  *Id.* at 6,148-49 (footnote omitted).  In a footnote, Commerce instructed that "[s]uch entities include entities that were preliminarily granted a separate rate in any currently incomplete segment of the proceeding (*e.g.*, an ongoing administrative review, new shipper review, *etc.*) . . . ."  *Id.* at 6,149 n.2.

Linyi Bonn was not eligible to file a separate rate certification because, as of the time of the Initiation Notice, it had not obtained "a separate rate from a completed segment of the proceeding," *id.*  As of the February 3, 2014 publication of the Initiation Notice, Linyi Bonn was participating in the ongoing new shipper reviews, which had been initiated on July 31, 2013.

The preliminary results of the new shipper reviews (published on June 12, 2014) had not yet been issued as of the date of the Initiation Notice, and the final results of the new shipper reviews were not issued until November 7, 2014.

Linyi Bonn did not submit a separate rate application during the second administrative review.  Had it done so, and had the information it submitted been unchanged from the information it submitted in the new shipper reviews (i.e., establishing independence from the PRC government), Linyi Bonn would not have been subjected to the 58.84% rate assigned to the PRC-wide entity.  This is apparent from the rationale Commerce stated in the Final Results for assigning Linyi Bonn the 58.84% rate, in which it included Linyi Bonn within the group of companies that "were named in the *Initiation Notice* but did not submit a certification of no shipment, separate rate application or separate rate certification" and were "therefore . . . part of the PRC-wide entity."  *Final Results*, 80 Fed. Reg. at 41,478, 41,478 n.18.

Just what result would have obtained had Linyi Bonn filed a separate rate application is not clear from the Final Results.  As the court mentioned previously, the separate rate respondents who were reviewed in the second review but not individually examined received a margin of 13.74% in the second review.  Alternatively, had Commerce treated Linyi Bonn as an individually examined respondent based on the one sale reviewed in the new shipper reviews, presumably it would have assigned a new margin of zero to Linyi Bonn in the second review. Another possibility is that Commerce would have treated Linyi Bonn as it did Huade and Fuerjia, i.e., by allowing Linyi Bonn to retain its zero margin from the new shipper reviews, but this prospect is clouded by the Department's statement in the Final Results that it found that Huade and Fuerjia "did not have any *qualifying* shipments for the Department to review, *due to their*

*certification that their only POR shipments underwent review during their respective NSRs*."

*Final Results*, 80 Fed. Reg. at 41,477 (emphasis added).  As discussed herein, Commerce

rejected Linyi Bonn's analogous submission as untimely.

Defendant argues that "[b]ecause Linyi Bonn failed to rebut the presumption of

government control, and it was Linyi Bonn's burden to do so, Commerce correctly found that it

remained part of the China-wide entity."  Def.'s Br. 17 (citing *Final I&D Mem.* 18; *Transcom*

*Inc. v. United States*, 294 F.3d 1371, 1373) (Fed. Cir. 2002)).  Defendant argues, in essence, that

Commerce was justified in taking the action it did, and the irrefutable fact that Linyi Bonn failed

to file a separate rate application in the second review lends support to this argument.  The

Initiation Notice placed Linyi Bonn on notice that it would need to file a separate rate application

to obtain in the second review a rate separate from that assigned to the PRC-wide entity, and

Linyi Bonn did not do so.  Linyi Bonn points out that during the time in which Commerce was

conducting the second review, Commerce continued to pursue its new shipper inquiry as to Linyi

Bonn, Pl.'s Br. 16, which also involved a determination of independence from government

control.  However, the Department's statements in the Initiation Notice are not reasonably

interpreted to mean that Commerce would consider Linyi Bonn's submission of separate rate

information during the concurrent new shipper reviews to suffice as a separate rate application

for purposes of the second review.  Were there nothing more on the record pertinent to this issue,

defendant's argument that the absence of a separate rate application should control the result in

this case might have merit.  However, there is more.

As the court has explained, the record as submitted does not allow the court to conclude

that Commerce provided notice of the procedure by which Linyi Bonn could have sought to

retain the zero rate it obtained in the new shipper reviews.  The record demonstrates, moreover,

that had Linyi Bonn succeeded under the procedure, Commerce would not have required Linyi

Bonn to file a separate rate application in order to retain the zero rate.  The Final Issues &

Decision Memorandum confirms this point by contrasting Linyi Bonn with Huade and Fuerjia.

Responding to Linyi Bonn's argument that Linyi Bonn submitted, during the new shipper

reviews, the information Commerce needed, Commerce stated that "it was incumbent upon all

three respondents in the new shipper review to submit timely information in the administrative

review to certify that they continue to meet the criteria for obtaining a separate rate[] *or* that they

made no reviewable shipments during the POR."  *Final I&D Mem.* 20 (emphasis added).  It

appears from the record that Huade and Fuerjia benefitted from the filing of their partial no

shipment certifications by not being required to submit separate rate applications.  Each was

allowed by Commerce to retain the result that each obtained in the new shipper reviews, i.e., a

zero margin going forward.  Had Linyi Bonn filed its partial no shipment certification timely, it

could have expected to be treated in the same way.

  To summarize, this case presents the question of whether the Department's failure to

disclose its "partial no shipment certification" procedure requires the court to set aside the Final

Results even though Linyi Bonn did not file a separate rate application in the second review.

The court concludes that it does.

  In a case in which an agency commits a procedural error that does not affect the outcome

of the proceeding or prejudice the complaining party, a court ordinarily will not order a remedy.

*See*, *e.g.*, *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996) (finding that

U.S. Custom and Border Protection, in notifying a party that a liquidation extension was sought

but not why, had committed a harmless error because it did not prejudice the party or deprive it of taking any actions to challenge the extension in court).  "Prejudice, as used in this setting, means injury to an interest that the statute, regulation, or rule in question was designed to protect." *Id.*  Because Linyi Bonn unquestionably had an interest in obtaining the benefit of the zero margin it was assigned according to the new shipper provision in the statute, this is not a case of harmless error but instead a case where such prejudice exists.  The Department's error was a consequential one in that it not only had the potential to affect the outcome of the review proceeding but also prejudiced Linyi Bonn by denying Linyi Bonn notice of the opportunity to pursue the outcome obtained by Huade and Fuerjia without filing a separate rate application.  Linyi Bonn unfairly was placed at a competitive disadvantage relative to Huade and Fuerjia and other exporters/producers.  On this record, the court cannot presume that Linyi Bonn's untimeliness in attempting to file a partial no shipment certification would have occurred had Commerce properly disclosed its partial no shipment certification procedure.  Because of the Department's error, the second review proceeding was not conducted according to principles of fundamental fairness and due process as to Linyi Bonn, and the court must order corrective action.

### 4.  Commerce Must Correct the Procedural Error by Affording Linyi Bonn the Opportunity to Retain the Zero Margin and Cash Deposit Rate Obtained in the New Shipper Reviews

In addition to arguing that Commerce abused its discretion in rejecting its partial no shipment certification, Pl.'s Br. 11-14, Linyi Bonn argues that the one sale Commerce reviewed during the new shipper review, on which Commerce determined a zero margin for Linyi Bonn, was the only sale Linyi Bonn made during the one-year POR for the second periodic administrative review, *id.* at 14.  Linyi Bonn maintains that the certification it attempted to file

was not actually necessary to the establishment of this fact as it "simply would have confirmed

the evidence on the record," which was data obtained from U.S. Customs and Border Protection

("CBP").  *Id.* at 15.

Commerce rejected this argument during the second review.  *Final I&D Mem.* 20 ("the

Department disagrees with Linyi Bonn's argument that the necessary information on its

shipments was already on the record from the CBP data results that the Department obtained for

purposes of respondent selection.").  The Department's analysis was as follows:

> The Department has previously determined, and the CIT has agreed, that the
> information from the CBP data queries alone is not sufficient to reliably conclude
> that there were no entries of subject merchandise from a company under review
> during the POR.  Although CBP data queries are an important tool in our
> analyses, the Department has recognized that these same data are not always
> complete or conclusive.  Thus, the Department does not rely solely on CBP data
> queries as a dispositive source of data on company-specific exports for purposes
> of determining whether a company had shipments.  Moreover, as stated in the
> *Initiation Notice*, the Department requires that a company timely certify that it
> had no exports, sales, or entries during the POR.  The Department considers
> making a finding of no shipments only if the producer or exporter, as appropriate,
> submits a properly filed and timely statement certifying that it had no exports,
> sales, or entries of subject merchandise during the POR.  The company's own
> certification is considered a necessary piece of evidence of no shipments, to be
> considered along with the CBP data.  These submissions are subject to
> verification in accordance with section 782(i) of the Act.  After receiving a
> timely, properly filed no-shipment certification, it is the Department's practice to
> confirm the respondent's certification by making a no-shipment inquiry with the
> CBP.  It is only with this evidence on the record that the Department finds that it
> has a sufficient basis upon which to make a determination of no shipments.

*Id.* at 20-21 (footnotes omitted).

In the quoted language, Commerce stated a policy of making "a finding of no shipments

only if the producer or exporter, as appropriate, submits a properly filed and timely statement

certifying that it had no exports, sales, or entries of subject merchandise during the POR," *id.*

at 21, but the Department's stated policy is inapplicable in this case.  As the court has

emphasized, Linyi Bonn was not in a position to file a no shipment certification, and Commerce

failed to disclose to the public the type of certification, i.e., a partial no shipment certification,

that could suffice instead.  Therefore, the problem created by the absence from the record of that

type of certification is a problem of the Department's own making.  This problem arose not only

from the Department's exclusion of Linyi Bonn's partial no shipment certification from the

record but also from the Department's failure to provide public notice of its procedure.  On

remand, Commerce must correct the problem created by its failure to provide that notice.

Because the procedural flaw was prejudicial to Linyi Bonn, the only remedy that will suffice is

one that affords Linyi Bonn the opportunity it would have had if the Department's failure to

provide notice had not occurred.  Commerce now may choose to afford Linyi Bonn that

opportunity by admitting Linyi Bonn's partial no shipment certification to the record and giving

it fair consideration, or it may choose to provide this opportunity by another method that

achieves the same result, i.e., the providing to Linyi Bonn the opportunity to pursue the result

that Huade and Fuerjia obtained in the second review.

     Because the prejudice resulting to Linyi Bonn is continuing for as long as Linyi Bonn

lacks the cash deposit rate it might have obtained absent the Department's violation, the court is

ordering relief on an expedited basis.  For the same reason, the court is inviting the parties to

address in their comment submissions the issue of when Commerce will effectuate that remedy

by means of instructions issued to CBP.  In its comment submission, plaintiff may address the

question of whether, and on what grounds, the court should issue a remedy in equity, i.e.,

permanent injunctive relief.

### III. CONCLUSION AND ORDER

For the reasons stated in the foregoing, Commerce must reconsider its decision in the Final Results and reach a new determination upon remand ("Remand Redetermination") consistent with this Opinion and Order.  Therefore, upon consideration of the contested decision and all papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that Commerce, within 45 days of the issuance of this Opinion and Order, shall file its Remand Redetermination and inform the court of the date by which it will effectuate that determination by means of instructions issued to CBP; it is further

**ORDERED** that plaintiff, plaintiff-intervenors, and defendant-intervenor may submit comments on the Remand Redetermination within 15 days of the filing of the Remand Redetermination; it is further

**ORDERED** that in their comment submissions the parties may address the issue of when the Remand Redetermination should be effectuated in instructions issued to CBP; and it is further

**ORDERED** that defendant may respond to plaintiffs' comments within 15 days of the filing of the comment submissions by the parties.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: April 21, 2017
New York, New York